**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 23-161-DLB**

**JAIME K. FAHRBACH and**                                                               **PLAINTIFFS**
**JAMES S. FALLER, II**

**v.**                   **MEMORANDUM OPINION AND ORDER**

**SHAUN HARDER, et al.**                                                                  **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiffs Jaime Fahrbach and James Faller, proceeding *pro se*, have filed a civil rights complaint and have paid the required filing fees. (Doc. # 1). The Plaintiffs contemporaneously filed an "Emergency Motion for a Temporary Restraining Order" ("TRO Motion"). (*See* Doc. # 3)

Before proceeding, the Court will conduct a *sua sponte* examination of its subject matter jurisdiction over this case. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). This rule permits a district court to examine both whether subject matter jurisdiction exists and whether the doctrines of abstention, the *Rooker-Feldman* doctrine, or other jurisdictional defects might apply. If it finds subject matter jurisdiction lacking, the court may dismiss the case without a hearing. *ADSA, Inc. v. Ohio*, 176 F. App'x 640, 642 (6th Cir. 2006). For the reasons set forth below, the Court will dismiss this action for want of subject matter jurisdiction and other jurisdictional concerns.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

This matter involves a dispute over the custody of G.H., a nine year-old boy.[1] Plaintiff Jamie Fahrbach is the biological mother of G.H. Fahrbach currently resides in Louisville, Kentucky. Defendant Shaun Harder ("Harder") is not G.H.'s biological father but has been involved in raising G.H. since birth and has claimed legal responsibility for him in certain respects. Harder resides in Elmore, Ohio, which is located in Ottawa County. Co-plaintiff James Faller is G.H.'s grandfather, and resides in Evans, Georgia. Defendant Jeanine Harder is Shaun Harder's mother, and is a deputy sheriff in Ottawa County, Ohio. Defendant Stephen Levorchick is the Ottawa County Sheriff and employs Jeanine Harder. Defendant Mike DeWine is the Governor of the State of Ohio. (Doc. # 1 at 3-4).

G.H. was born in Ohio in 2014, with Harder listed as the father on the birth certificate. Fahrbach and Harder lived in Ohio for six months, then relocated to Kentucky. Both parents lived in this state until August 2021, when Harder returned to live in Ohio. In August 2021, while she was living in Walton, Kentucky, Fahrbach agreed to let Harder take G.H. to Ohio for a visit, but Harder secretly intended to keep G.H. in Ohio. Harder returned to Elmore, Ohio with G.H., and with the assistance of his mother Jeanine and the consent of Sheriff Levorchick, took steps to hide G.H. from authorities. In August 2021, Harder also filed an *ex parte* proceeding in the Court of Common Pleas in Ottawa

---

[1] Because the Court evaluates jurisdiction facially rather than factually, it accepts the plaintiffs' factual allegations as true, *Global Technology, Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015), and relates them as such in this opinion.

County to obtain custody of G.H.  Based upon assertedly false statements, the Ohio court granted Harder custody of G.H. that day.  (Doc. # 1 at 5-6).

Fahrbach later learned that Harder had previously been convicted of offenses against minors, including "grooming a (14) fourteen-year-old girl for sex."[2]  In October 2021, Harder came to Kentucky to visit with G.H., and "offered Fahrbach $15,000.00 cash to purchase G.H."  (*Id*. at 6, 8).

The Ohio court held one or more hearings in November 2021.  During a hearing held on November 3, 2021, a state judge from Boone County, Kentucky called the Ohio judge presiding over the hearing to "protest" that Kentucky had asserted jurisdiction over the matter. Following that conversation, the Ohio court concluded that it lacked jurisdiction over the case.  During another hearing, guardian ad litem Patricia Kovacs testified about the various criminal charges that had previously been filed against Harder.  At the conclusion of this hearing, the Ohio court ordered custody returned to Fahrbach.  (Doc. # 1 at 6-8).

In September 2022, Harder appealed the Ohio court's determination that it lacked jurisdiction.  In January 2023, the Ohio Court of Appeals, relying upon assertedly false factual allegations by Harder, concluded that the Ohio court possessed jurisdiction over the custody matter, and remanded for further proceedings.  (*See* Doc. # 1-1 at 23-40).  Thereafter, the Ohio court granted Harder visitation notwithstanding his prior criminal offenses.  Further, it conducted several days of hearings in August and September 2023

---

[2]  In their TRO Motion, plaintiffs state that the court records regarding Harder's conviction "have disappeared."  *Id*. at 2.  In fact, the pertinent records are readily retrievable online.  *See* http://commonpleas.co.ottawa.oh.us/BenchmarkWeb-Live/CourtCase.aspx/CaseSearch (accessed Dec. 6, 2023).

to determine custody of G.H.  During the hearings, evidence was offered that other minors at Harder's home were being sexually abused and that some had attempted suicide. Nonetheless, on October 25, 2023, the Ohio court granted Harder custody of G.H.  (Doc. # 1 at 8-9).  The factual findings of the Ohio court differ from Fahrbach's allegations in several respects.  The Ohio court noted that Harder had worked for a private company since May 2021, and that Fahrbach has resided in Louisville, Kentucky since the summer of 2023.  It also concluded that from 2015 to 2021, G.H. had mostly lived with Harder in Ohio, not with Fahrbach in Kentucky.  (*See* Doc. # 1-1 at 3-4).

The plaintiffs assert seven claims in their complaint, including that:

(1) Harder and his mother Jeanine conspired to kidnap G.H. from Kentucky and conceal his whereabouts in violation of 42 U.S.C. § 1983;[3]

(2) Harder, Jeanine Harder, and Sheriff Levorchick conspired to conceal G.H. in violation of 42 U.S.C. § 1983;

(3) the State of Ohio and Governor DeWine failed to adequately train the Ohio court, resulting in the improper exercise of jurisdiction;

(4) Harder and Jeanine Harder conspired to transport G.H. across state lines for illicit purposes;

(5) Harder and Jeanine Harder conspired to traffic in children by offering to purchase G.H.;

(6) the State of Ohio and Governor DeWine failed to adequately train the Ohio court, resulting in the consideration of different facts and insufficient means for discovery; and

---

[3] Plaintiffs also assert that defendants' actions violated their rights under "*Bivens*."  But *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), in the narrow circumstances where it applies, permits an implied cause of action for a violation of civil rights by those who act under color of *federal* law, not state law.  *See id*. at 397.  Plaintiffs do not state or suggest that any of the defendants acted in that capacity, and *Bivens* plainly has no relevance here.

>    (7)   the defendants all conspired to violate the plaintiffs' civil rights through inadequate training and permitting "an attack on [G.H.] by a sexual predator."

(Doc. # 1 at 10-12). The plaintiffs invoke both this Court's federal question and diversity jurisdiction, as well as its supplemental jurisdiction under 28 U.S.C. § 1367 with respect to state law claims. (*Id*. at 2). The plaintiffs assert that:

> This action involves violations of 42 U.S.C. § 1983 (Bivens action/Civil rights) by law enforcement (Defendants Jeanine Harder ((J. Harder,") Sheriff Levorchick ("Levorchick")) and 18 U.S.C. § 1591, (sex trafficking) and 18 U.S.C. § 7102 (child trafficking) by Defendants Shaun Harder ("S. Harder") and Jeanine Harder, bribery in violation of KRS 524.020 and interstate Kidnapping (Also known as the Parental Kidnapping Prevention Act "PKPA" (Defendants Jeanine Harder, Shaun Harder and Sheriff Levorchick)) in violation of 18 U.S.C. § 1201 and exercising Jurisdiction where none exists in violation of the Civil Rights of the Plaintiff Jaime Fahrbach's 14th Amendment rights by rendering a Judgment against her where no Personal jurisdiction or in personam jurisdiction exists and the Court in Ohio, ...

(Doc. # 1 at 2). Notably, many of the referenced sources of federal and state law do not form any part of the seven claims enumerated in the complaint. Plaintiffs seek monetary damages as well as "an immediate temporary and permanent injunction that prevents the State of Ohio from presiding over this matter based entirely on lack of jurisdiction." (*Id*. at 12).

The plaintiffs filed their TRO Motion contemporaneously with their complaint. *See* (Doc. # 3). The TRO Motion repeats the factual allegations of the complaint. Through their motion, plaintiffs ask this Court to enter an Order "which temporarily restrains and permanently injuncts (*sic*) the Defendants from entering orders or enforcing" the Ohio court's October 25, 2023, order awarding custody of G.H. to Harder. (*Id*. at 1; *see also* Doc. # 3 at 6) ("the undersigned Plaintiffs respectfully ask this Court to immediately issue

a Temporary Restraining Order staying any Orders related to the matters hereto until such time that this Court can hold a hearing in this matter and then issue a permanent injunction otherwise preventing the state of Ohio from issuing Orders in the matter of G.H. and or his custody or regarding the Plaintiffs in this matter as they relate to G.H.").

On the same day the complaint was filed, the plaintiffs obtained summons for each of the defendants from the Clerk of the Court. (*See* Doc. # 2). However, to date the plaintiffs have not filed any proofs of service into the record, *see* Fed. R. Civ. P. 4(l)(1), or otherwise given any indication that they have validly served any of the defendants with process.

## II. SUBJECT MATTER JURISDICTION

The Court concludes that this action must be dismissed for lack of subject matter jurisdiction. The Court has an ongoing "duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue sua sponte." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it.").

It is well established that federal courts are courts of limited jurisdiction, and the burden of establishing jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Here, that burden falls upon the plaintiffs. *See Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015). In this case, plaintiffs assert that there exists both federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship under 28 U.S.C. § 1332. (Doc. # 1 at 2). Based upon the

6

claims asserted and the apparent citizenship of the parties, the Court does not question at this juncture that either or both provisions are satisfied.

However, domestic relations matters constitute a clear exception to the subject matter jurisdiction of the lower federal courts. Even where jurisdiction otherwise exists, "federal courts have no jurisdiction to resolve domestic relations disputes." *Partridge v. State of Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003) (*citing Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *In re Burrus*, 136 U.S. 586, 593–94 (1890) ("the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."); *see also Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) ("[F]ederal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues.").

It is true that the domestic-relations exception does not apply to "every case touching and concerning the issuance of a divorce, the award of alimony, or a child-custody decree." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015). But the exception does apply "if the plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody decree." *Id*. Through her claims and the relief requested, Fahrbach directly asks this Court to countermand the child custody order entered by the Ohio state court. This is precisely what the exception is designed to prevent. *See id*. at 797 (noting that modification or enforcement of a child-custody decree are remedies "typically attendant to the dissolution of a marriage" which would "entail continuing judicial supervision of a volatile family situation, and federal courts are poorly equipped to handle that task."); *Stephens v. Hayes*, 374 F. App'x 620, 623 (6th Cir. 2010)

("in the field of domestic relations, it has been [its] consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment ....").

Although Fahrbach invokes § 1983 as the basis for her claims, the Court "lack[s] jurisdiction where ... the suit is actually concerned with domestic relations issues." *Danforth*, 76 F. App'x at 616-17 (holding, pursuant to the domestic relations exception and the *Rooker-Feldman* doctrine, that the Court lacked jurisdiction over a § 1983 action where (as in this case) the constitutional claims were conclusory and "a pretense to obtain federal review of domestic relations matters"). Because the domestic relations exception is implicated, the Court will dismiss this matter so that the plaintiffs may pursue their claims in the proper forum. *See Hughes v. Hamann*, 23 F. App'x 337, 338 (6th Cir. 2001); *McLaughlin v. Cotner*, 193 F.3d 410, 413-14 (6th Cir. 1999).[4]

The Court also declines to exercise jurisdiction over plaintiffs' claims based upon one, and perhaps two, additional considerations. First, as a matter of comity and due respect for state courts, federal courts will generally decline to exercise jurisdiction over a matter where doing so would interfere with ongoing state proceedings pursuant to the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* abstention doctrine, federal courts must abstain from hearing a federal claim when a pending state proceeding involves important state interests and affords the

---

[4] Some courts have held that the domestic relations exception only applies to cases arising under diversity jurisdiction, not federal question jurisdiction. *Cf. Reale v. Wake Cty. Hum. Servs.*, 480 F. App'x 195, 197 (4th Cir. 2012); *Wattie-Bey v. Att'y Gen.'s Off.*, 424 F. App'x 95, 96 (3d Cir. 2011). But this appears to be a minority view, with the Sixth Circuit and other federal courts of appeal holding, directly or by implication, that it applies with equal force to federal question jurisdiction. *See Danforth*, 76 F. App'x at 616; *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (holding that the exception "[applies] to both federal-question and diversity suits."); *Jones v. Brennan*, 465 F.3d 304, 307 (7th Cir. 2006).

plaintiff an adequate opportunity to raise constitutional claims. *See Middlesex Co. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Abstention is particularly appropriate where the state proceedings involve family matters such as divorce or child custody. *Moore v. Sims*, 442 U.S. 415, 435 (1979) (noting that federal and state courts possess concurrent rather than exclusive jurisdiction over constitutional issues, and "state processes are [equal] to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."); *Mann v. Conlin*, 22 F.3d 100, 106 (6th Cir. 1994), *cert. denied*, 513 U.S. 870 (1994). A federal court will thus not interfere with a pending state court proceeding, particularly when it involves child custody and/or support issues. *See*, *e.g.*, *Tindall v. Wayne Co. Friend of Court*, 269 F.3d 533 (6th Cir. 2001); *Kelm v. Hyatt*, 44 F.3d 415, 420–21 (6th Cir. 1995); *Steele v. Steele*, No. 10-CV-40-KSF, 2011 WL 2413400, at *5-6 (E.D. Ky. June 10, 2011) (applying *Younger* doctrine and refusing to interfere with the plaintiff's pending state court domestic relations proceeding); *Steele v. Steele*, No. 12-CV-439, 2012 WL 3061028, at *7 (S.D. Ohio July 3, 2012) (recommending that under *Younger*, the district court not interfere with the pending state court domestic relations case); *Cikraji v. Cuyahoga Support Enforcement Agency*, No. C2–01–100, 2001 WL 1681126, at *1 (S.D. Ohio August 30, 2001) (dismissing plaintiff's claims under both the domestic relations exception and the *Younger* abstention doctrine because they were directly tied to a pending domestic relations case and concerned the amount of child support the plaintiff had been ordered to pay). Because the plaintiffs complain of actions taken during the course of the ongoing state court custody proceedings in Ohio regarding G.H., the Court will abstain from entertaining their claims. *Alexander v. Morgan*, 353 F.

9

Supp. 3d 622, 628 (W.D. Ky. 2018) ("abstention is generally appropriate in matters of family relations such as child custody.") (quoting *Meyers v. Franklin Cty. Court of Common Pleas*, 23 F. App'x 201, 204 (6th Cir. 2001)).

Second, in the event the custody proceedings in Ohio have, to some degree or another, been finalized, the appropriate means to challenge the rulings of the Ohio court is through direct appeal and, if unsuccessful, a petition for a writ of *certiorari* to the United States Supreme Court. It is well-established that a dissatisfied litigant cannot circumvent this established mechanism by filing a separate proceeding in federal court to challenge an unwelcome outcome in state court.

The *Rooker–Feldman* doctrine instructs that because the United States Supreme Court has exclusive jurisdiction to hear appeals from state court judgments, lower federal courts lack jurisdiction over cases that in effect seek appellate review of state court judgments. *See Stemler v. Florence*, 350 F.3d 578, 588–89 (6th Cir.2003); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). A claim raised in federal district court effectively seeks to appeal a state court judgment when the federal claim is "inextricably intertwined" with the state court decision. *Stemler*, 350 F.3d at 589.

To determine whether the doctrine is applicable, courts must look to "the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). The doctrine plainly applies to bar plaintiffs' third, sixth, and seventh claims, which complain directly of injury arising from the Ohio court's custody determination.

10

### III. REQUIREMENTS UNDER RULE 65(b)

As discussed above, the Court must deny the plaintiffs' TRO motion because it does not have subject matter jurisdiction over the case. However, the Court would deny the motion even if that were not so. In addition to satisfying the requirements for preliminary injunctive relief under Rule 65(a) of the Federal Rules of Civil Procedure, the moving party must meet the stringent requirements of Rule 65(b) to obtain an ex parte temporary restraining order:

> (1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). The plaintiffs expressly acknowledge these specific requirements in their TRO Motion. (*See* Doc. # 3 at 3). But the Court will deny relief because the plaintiffs: (1) have not demonstrated that they made any effort to serve the defendants with process; (2) fail to establish that irreparable harm would occur before they could give notice to the defendants; and (3) made no effort to delineate their efforts to provide notice to the defendants.

First, the general rule is that "a court ordinarily does not have power to issue an order against a person ... over whom it has not acquired in personam jurisdiction." 11A Charles Alan WriG.H.t & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2956 (3d ed. 2023); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)

("A court without personal jurisdiction is powerless to take further action."). Thus, a court cannot enjoin a party until it obtains personal jurisdiction over them. *Cf. AimPoint Re SA v. GCD & Assocs., LLC*, No. 1:17-CV-1817-WSD, 2017 WL 7519193, at *4 (N.D. Ga. July 20, 2017). And formal service of process upon the defendant is the mechanism through. which the exercise of jurisdiction is affected. *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (noting that to obtain personal jurisdiction over a defendant, a court must have (1) proof of "notice to the defendant," (2) "a constitutionally sufficient relationship between the defendant and the forum," and (3) "authorization for service of a summons on the defendant."). Thus, in the absence of extenuating circumstances not present here,[5] a court cannot compel a person to act or refrain from acting before it possesses personal jurisdiction over them, a condition that cannot be satisfied until they are properly served with process. *R.M.S. Titanic, Inc. v. Haver*, 171 F. 3d 943, 958 (4th Cir. 1999) (preliminary injunction issued against defendant company was unenforceable because district court did not obtain personal jurisdiction over company through valid service of process).

Second, plaintiffs fail to establish that irreparable harm would come to pass before they could give notice to the defendants. The Ohio court issued its custody decision on October 25, 2023, awarding custody of G.H. to Harder. However, that custody was only effective November 25, 2023, and the order afforded plaintiffs fourteen days to file

---

[5] *Cf. H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (excusing formal service requirement where defendant had actual notice of motion for temporary restraining order and formal service, which had to be effected upon foreign corporation through the Geneva Convention, could not be completed before subsequent events would render the motion moot).

objections.  (*See* Doc. # 1-1 at 1, 10-11).  Hence the custody determination was not immediately effective pending further review.  In addition, one day before plaintiffs filed this action, Fahrbach filed a petition against Harder seeking a domestic violence order from the family court in Jefferson County, Kentucky.  *See Fahrbach v. Harder*, No. 23-D-504167-001 (Jefferson Co. Fam. Ct. 2023).[6]  Fahrbach could have notified Harder of the relief she intended to seek in this action, but she does not indicate that she did so.

Third, in their TRO Motion the plaintiffs do not describe any efforts they made to notify the defendants that they had filed their motion or identified the relief sought.  The Supreme Court long ago explained that:

> There is a place in our jurisprudence for ex parte issuance, without notice, of temporary restraining orders of short duration; but there is no place within the area of basic freedoms guaranteed by the First Amendment for such orders where no showing is made that it is impossible to serve or to notify the opposing parties and to give them an opportunity to participate.

*Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 180 (1968).  The requirements of Rule 65(b)(1)(B) are mandatory and cannot be disregarded particularly where it appears that the provision of notice would have imposed no undue burden upon the plaintiffs.  For each of these reasons, the plaintiffs failed to satisfy the conditions necessary to warrant the issuance of a temporary restraining order.[7]

---

[6] *See* https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=056&court=2&division=DI&caseNumber=23-D-504167-001&caseTypeCode=DV&client_id=0 (accessed Dec. 6, 2023).  The Court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969).  *See also United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites.").

[7] There are other, more fundamental, reasons to deny relief.  The TRO Motion asks this Court to enjoin the Ohio court from enforcing its own order.  (Doc. # 3 at 1, 6).  Setting aside the plaintiffs'

13

## IV. OTHER GROUNDS FOR DISMISSAL

Finally, to the extent any of the plaintiffs' claims are not subject to the difficulties described above, they are subject to prompt dismissal on various other grounds. With respect to the § 1983 claims against Harder, the plaintiffs do not allege that he acted "under color of law" as is required for civil rights liability to attach. Because it appears that Harder was acting as a private citizen rather than as a government official during the events complained of in 2021, the civil rights claims against him must be dismissed. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The plaintiffs' claims against Harder, Jeanine Harder, and Sheriff Levorchick are also barred by the applicable statute of limitations. The asserted kidnapping of G.H. in Kentucky (claim one), transport of G.H. from Kentucky to Ohio (claim four), concealment of G.H. from discovery in Ohio (claim two), and offer made in Kentucky to purchase G.H. (claim five), all transpired from August through October 2021. (Doc. # 1 at 5-6, 8). The statute of limitations for constitutional claims arising in Kentucky is one year, *see Bonner v. Perry*, 564 F.3d 424, 431 (6th Cir. 2009), and two years for claims arising in Ohio, *see Beaver St. Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023). Because the plaintiffs did not file suit until late November 2023, more than two years after the pertinent events transpired, these claims are time barred.

The plaintiffs also reference a grab-bag of federal criminal statutes related to kidnapping and human trafficking, as well as one Kentucky statute related to bribery. (Doc. # 1 at 2). But criminal statutes may only be enforced by prosecutors, and private

---

failure to name necessary and proper parties as defendants, as explained more fully below, longstanding principles of abstention would require denial of the relief requested.

citizens lack standing to assert their violation. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Kafele v. Frank & Wooldrige Co.*, 108 F. App'x 307 (6th Cir. 2004). Claims based upon these penal statutes will therefore be dismissed.

## V. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The complaint filed by plaintiffs Jaime Fahrbach and James Faller (Doc. # 1) is **DISMISSED**.

(2) All pending motions are **DENIED** as moot.

(3) The Court **STRIKES** this matter from the docket.

This 6th day of December, 2023.



Signed By:
*David L. Bunning* DB
United States District Judge